512 P.2d 664

**Emmett Don KNOX and Raymond R. Knox, Plaintiffs and Respondents,**

**v.**

**Stiles M. THOMAS dba Ty's Auto Sales, Defendant and Appellant.**

**No. 13172.**

Supreme Court of Utah.

July 10, 1973.

of making the lease an auditor for the Internal Revenue Service and remained such for many years until his retirement.

Wendell P. Ables, Salt Lake City, for defendant and appellant.

M. Dayle Jeffs, Provo, for plaintiffs and respondents.

TUCKETT, Justice:

The plaintiffs brought these proceedings pursuant to the provisions of the Uniform Consumer Credit Code, Section 70B–5–203, Utah Code Annotated 1953, as amended. The court below entered judgment in favor of the plaintiffs, and the defendant appealed.

The defendant is a used car dealer and as such entered into an installment sales contract with the plaintiffs on September 15, 1971. The defendant prepared a contract in question and computed the finance charge to be added to the purchase price. The defendant failed to calculate or to enter the annual percentage rate in the contract as provided for by Section 70B–2–304, which reads as follows:

(1) Except as otherwise specifically provided, if a seller is required to give to a buyer a statement of the rate of the credit service charge he shall state the rate in terms of an annual percentage rate as defined in subsection (2) or in terms of a corresponding nominal annual percentage rate as defined in subsection (3), whichever is appropriate.

Thereafter the plaintiffs commenced these proceedings for the purpose of recovering the penalty provided for by Section 70B–5–203, which provides as follows:

(1) Except as otherwise provided in this section, a creditor who, in violation of the provisions on disclosure (sections 70B–2–301 to 70B–2–313 . . .) . . . of the chapter on Credit Sales . . . fails to disclose information to a person entitled to the information under this act is liable to that person in an amount equal to the sum of

(a) twice the amount of the credit service or loan finance charge in connection with the transaction, but the liability pursuant to this paragraph

shall be not less than $100 nor more than $1,000; and

(b) in the case of a successful action to enforce the liability under paragraph (a), the costs of the action together with reasonable attorney's fees as determined by the court.

The defendant makes no claim that he did in fact comply with the statute on disclosure but interposed a defense under the provisions of Section 70B-5-203(3), which reads as follows:

(3) A creditor may not be held liable in any action brought under this section for a violation of this act if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error.

A trial was had upon the issues, and thereafter the court made a finding to the effect that the defendant had failed to establish a defense pursuant to the provisions of Section 70B-5-203(3). It is the defendant's claim here that the evidence fails to support the finding of the court and that the case should be reversed.

The provisions of the statutes above referred to are a part of the Utah Uniform Consumer Credit Code which was adopted by the legislature in 1969. The provisions of the Utah Act follow closely the federal statute known as the Truth In Lending Act. The legislation was championed by lenders and their various organizations who were willing to assume the duty of disclosure for the right to charge higher rates of interest provided for in the legislation. The legislation provided that persons wilfully and knowingly violating certain provisions of the act would be guilty of a misdemeanor. However, it appears that the legislative intent was to rely on a system of private policing by permitting those who might be wronged by violations of the act to recover penalties. The Federal Truth In Lending Act also contains the same provisions regarding enforcement. The defendant admitted that he failed to disclose the annual percentage rate in the contract and we must conclude that the trial court correctly ruled that the defendant failed to establish a defense under Section 70B-5-203(3). The wisdom of the statutory scheme is not for the court to decide.[1]

The record before us reveals no error in the decision of the court below which would justify our interference. The judg-

---

1. Ratner v. Chemical Bank New York Trust Co., D.C., 329 F.Supp. 270; Joseph v. Norman's Health Club, Inc., D.C., 336 F.Supp. 307; Buford v. American Finance Co., D.C., 333 F.Supp. 1243; Mourning v. Family Pub. Ser., 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318.

ment of the district court is affirmed. Respondents are entitled to costs.

HENRIOD and CROCKETT, JJ., concur.

ELLETT, Justice (dissenting):

I dissent. I think the ruling of the trial court and the main opinion of this court are too technical to stand, and I would like to explain why.

The total amount of money which plaintiffs herein agreed to pay for the automobile when they bought it was $2,154.96 cash. The defendant as seller added $646.-64 for interest and handling charges, making a total of $2,801.60. This was to be paid not at the same rate each month during the life of the contract but at the rate of $126.72 per month for five months, then $86.72 per month for 25 months. The statute [1] provides that the seller may charge interest at the rate of 36 per cent per year on the first $300, 21 per cent per year on the next $700, and 15 per cent per year on all amounts over $1,000. The contract was to run for two and one-half years, and all parties agreed that the amount charged by way of interest and handling charges did not exceed the amount permitted by law.

Only the defendant testified in the matter, and he unequivocally stated that he was unable to calculate the average rate of interest which would yield the figure which he charged.

In discussing the matter after the evidence was all in, the court said, "It would be extremely difficult to figure out what the annual rate would, [sic] wouldn't it? . . . You probably couldn't do it. I doubt if I can do it."

Counsel for plaintiffs then stated, "But nevertheless, that's what the disclosure requirements are, that they must disclose what the annual percentage rates on the face of the contract so that the people can know what they are really paying for the financing on this contract."

I do not believe that the statute which required the seller to state the annual rate of interest was meant to be applied to a situation like this where, in order to accommodate the purchaser, the monthly payments are so varied that it is impossible to calculate the rate of interest. Especially is this so where the amount of interest is stated in the contract and is not in excess of that permitted by law.

I would reverse the trial court and remand the matter with directions to enter judgment for the defendant. I would also award the defendant costs.

CALLISTER, C. J., concurs in the opinion of ELLETT, J.

1. Section 70B-2-201, Utah Code Annotated 1953, as amended.